UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| KEVIN CARROLL, also known as ROBERT KEVIN CARROLL, CARROLL'S MOBILE HOMES, INC., and CARROLLS' PROPERTIES, LLC, Plaintiffs/Counterclaim-Defendants, vs. CMH HOMES, INC., 21st MORTGAGE CORP., and KEVIN CLAYTON, Defendants/Counterclaim-Plaintiffs. | No. 4:12-cv-23-SEB-WGH |

**ENTRY ON DEFENDANTS' MOTION TO DISMISS**

Before the Court is the Motion to Dismiss for Improper Venue filed by Defendants CMH Homes, Inc. ("CMH"), 21st Mortgage Corporation ("21st Mortgage") and Kevin Clayton ("Clayton") (Collectively, "Defendants"). [Docket No. 53]. This motion is fully briefed, and the Court, being duly advised, now **GRANTS** Defendants' motion.

### I. Background

#### A. Factual History

Prior to October 2008, Kevin Carroll ("Kevin") and his brother, Hollis Carroll, were co-owners of Carroll's Mobile Homes, Inc. ("Carroll's"), a CMH dealership located

1

in Georgetown, Indiana. Carroll's received most of its supply of mobile homes from a CMH plant in Hodgenville, Kentucky (the "Hodgenville plant"). Pls' Br. at 2, 4. Kevin mentioned to Clayton that he planned to buy out his brother to become the sole owner of Carroll's. Clayton and CMH arranged for Kevin to obtain the necessary money for the buyout with a loan from 21st Mortgage. Pls' Ex. A at 1. To effectuate the buyout, Carroll's and James Hurst ("Hurst"), principals of Carrolls' Properties, LLC ("Carrolls' Properties"), executed two mortgages on three parcels of real estate (the "Hurst property") on October 1, 2008. *Id.* at 2, 9, 13-14; Pls' Ex. B; Pls' Ex. C. Kevin also executed a personal guaranty agreement in connection with one of the mortgages. Pls' Ex. D. Plaintiffs claim the mortgages and personal guaranty agreement were fraudulently induced by CMH and Clayton and that the additional mortgage enabled Defendants to "double collateralize Plaintiffs' existing floor plan agreement[,] which was already secured by the mobile homes." Pls' Br. at 4.

On October 7, 2008, Defendants, without previously informing Kevin, Carroll's, or Carrolls' Properties (collectively "Plaintiffs"), announced they were closing their Hodgenville plant. Pls' Am. Compl. ¶ 18. When Plaintiffs complained to Clayton, Matt Webb, CMH's Vice President of Inventory Financing, allegedly threatened to take Plaintiffs' inventory, business, and all mortgaged properties. Pls' Am. Compl. ¶¶ 31-32. From that date forward, Plaintiffs had to obtain their inventory from the CMH plant in Knoxville, Tennessee (the "Knoxville plant"). *Id.* ¶ 33. According to Plaintiffs, the mobile homes made at the Knoxville plant were of lower quality causing Plaintiffs to experience a sharp drop in sales. This injury was compounded by Defendants'

2

progressive reductions in Plaintiffs' inventory, leaving them with less operating capital without reducing Plaintiffs' mortgage liability. *Id*. ¶ 34.

Plaintiffs fell behind on their mortgages payments and Defendants threatened to foreclose on the Hurst property. *Id*. ¶ 39. The parties executed an Asset Purchase Agreement ("APA") on March 9, 2010. Defs' Ex. 1. Pursuant to the APA, Plaintiffs sold $787,145.00 of inventory and personalty to CMH. *Id*. at 26. The APA contained a forum selection clause ("FSC"), which provides:

> Any action filed in connection with this Agreement shall be brought in the United States District Court for the Eastern District of Tennessee and each of the parties irrevocably submits to the exclusive jurisdiction of such court, waives any objection, present or future, to venue and convenience of forum and agrees not to bring any action in any other court.

*Id*. at 10. Plaintiffs claim the FSC was inserted into the APA without notice or negotiation. Pls' Br. at 6, Pls' Ex. E. Nonetheless, Kevin signed as principal of Carroll's Mobile Homes. Defs' Ex. 1 at 12. On March 12, 2010, the parties signed a Real Estate Sales Agreement ("RESA"), by which Plaintiffs conveyed the Hurst property to Defendants. Pls' Ex. G. The RESA contained a merger clause. *Id*. § 19. 21st Mortgage released its mortgage on the Hurst property on April 22, 2010. Pls' Ex. H. There was no FSC in either the RESA or the mortgage release.

### B. Procedural History

Plaintiffs filed suit in Floyd Circuit Court on February 14, 2012, accusing Defendants of fraud and constructive fraud. Defendants removed the case to our court on March 5, 2012, and on April 10, 2012, filed a motion to transfer the case to the Eastern District of Tennessee, pursuant to 28 U.S.C. § 1404(a) ("1404(a) motion"). [Docket

No.17]. While Defendants' motion was pending, Plaintiffs moved for leave to file an amended complaint. [Docket No. 31]. On July 3, 2012, the Court denied Defendants' 1404(a) motion, [Docket No. 40], and granted leave to file an amended complaint. [Docket No. 41]. Plaintiffs filed an amended complaint on July 27, 2012, [Docket No. 46], and on July 31, 2012, Defendants moved to dismiss the case under Federal Rule of Civil Procedure 12(b)(3) ("Rule 12(b)(3)") ("Rule 12(b)(3) motion"), claiming improper venue. [Docket No. 53].

## II. Standard of Review

A motion to dismiss based on a forum selection clause is treated properly as a Rule 12(b)(3) motion to dismiss for improper venue. *Auto. Mechanics Local 701 Welfare & Pension Funds v. Vanguard Car Rental USA, Inc.,* 502 F.3d 740, 746 (7th Cir.2007). In the Seventh Circuit, a plaintiff generally bears the burden of proving that venue is proper. *See Moore v. AT&T Latin Am. Corp.*, 177 F. Supp .2d 785, 788 (N.D. Ill. 2001) (citing *First Health Grp. Corp. v. Sanderson Farms, Inc.,* 2000 WL 139474, at *2 (N.D. Ill. 2000); 5B Wright & Miller, Federal Practice & Procedure § 1352 n.8 (3d ed.2008)). In evaluating a Rule 12(b)(3) motion, while the Court may consider facts beyond the complaint, *Moore,* 177 F. Supp. 2d at 788 (citing *First Health Grp.*, 2000 WL 139474, at *2)[1], it must accept Plaintiffs' allegations as true, and it must resolve any factual conflicts

---

[1] Plaintiffs have requested an evidentiary hearing. [Docket No. 61]. While district courts may hold hearings on motions to dismiss for improper venue, *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 676-77 (7th Cir. 2001), they are not required to do so. Since the Court finds it sufficient to address the motion based on the briefings, and all factual conflicts are resolved in Plaintiffs' favor, we hereby **DENY** Plaintiffs' motion for an evidentiary hearing.

4

in the parties' submissions in the Plaintiffs' favor. *Id*. Accordingly, we accept here the facts as pled by Plaintiffs.

### III.  Analysis

Plaintiffs advance several arguments in opposition to Defendants' motion all of which dictate that the case be tried in Indiana: that it is untimely and barred by collateral estoppel; the terms of the APA do not apply to this dispute and, in any event, not all Plaintiffs are subject to the APA; the FSC is invalid having been procured by fraud, oppression, undue influence, and overreaching; and various equitable concerns.

### A. Applicable Law

Under both federal and Indiana law, FSCs are *prima facie* valid and binding. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 92 S. Ct. 1907, 32 L. Ed. 2d 515 (1972); *Kimco Leasing, Inc. v. Ransom Jr. High Sch.*, 556 N.E.2d 1371, 1372 (Ind. Ct. App. 1990). The Seventh Circuit favors giving effect to FSCs and enforcing them if "venue is specified with mandatory or obligatory language." *Muzumdar v. Wellness Int'l Network, Ltd.*, 438 F.3d 759, 762 (7th Cir. 2006); *see also Appliance Zone, LLC v. NexTag, Inc.*, 2009 WL 5200572, at *2-3 (S.D. Ind. Dec. 22, 2009). Courts have enforced them even when: (1) not all parties were signatories to the contract containing the FSC, *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209-10 (7th Cir. 1993); (2) other contracts signed by the parties did not contain the FSC, *Am. Patriot Ins. Agency, Inc. v. Mut. Risk Mgmt., Ltd.*, 364 F.3d 884, 888 (7th Cir. 2004) ("*Am. Patriot*" or "*American Patriot*"); and (3) the claims' allegations of fraud arise in tort rather than breach of contract. *Kochert v.*

5

*Adagen Med. Int'l, Inc.*, 491 F.3d 674, 680 (7th Cir. 2007); *Abbott Labs. v. Takeda Pharm Co., Ltd.*, 476 F.3d 421, 424 (7th Cir. 2007); *Am. Patriot*, 364 F.3d at 888.

FSCs will not be enforced if to do so would be unreasonable or unjust or when an FSC is overreaching or procured through fraud. *M/S Bremen*, 407 U.S. at 15; *see also Kimco Leasing*, 556 N.E.2d at 1372. However, the party seeking to invalidate the FSC confronts a steep climb. To invalidate a clause based on unfairness or unconscionability, the contract must embrace unreasonable or unknown terms, and those terms must have been "the product of inequality of bargaining power." *Grott v. Jim Barna Log Sys.-Midwest, Inc.*, 794 N.E.2d 1098, 1102 (Ind. Ct. App. 2003); *see also Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585,593-94, 111 S. Ct. 1522, 113 L. Ed. 2d 622 (1991) ("*Carnival*"). For an FSC to be void due to overreaching, the party objecting to it must show that she would be effectively deprived of her day in court, if the clause were enforced. *Carnival*, 499 U.S. at 589; *Dexter Axle Co. v. Baan USA, Inc.*, 833 N.E.2d 43, 48 (Ind. Ct. App. 2005). To defeat enforceability based on fraud, a Plaintiff must prove the clause itself was fraudulently obtained. *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 n.14, 94 S. Ct. 2449, 41 L. Ed. 2d 270 (1974); *see also Am. Patriot*, 364 F.3d at 889; *Dexter Axle Co.*, 833 N.E.2d at 50.

**B. Defendants' motion is neither waived nor barred by collateral estoppel.**

Plaintiffs argue that Defendants' Rule 12(b)(3) motion seeks the same result as their previously denied 1404(a) motion in that it simply rehashes arguments that the Court rejected in the 1404(a) motion. They contend that since improper venue was raised as an affirmative defense by Defendants in their answers, Defendants were obligated to

file their motion at the time they filed the 1404(a) motion. Plaintiffs contend that because an objection to venue normally must be made at the earliest possible opportunity, FED. R. CIV. P. 12(h)(1), Defendants' failure to file the Rule 12(b)(3) motion when they first became aware of the basis for their objection makes it untimely. Pls' Resp. at 10 (citing *Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 391 (7th Cir. 1995); *Cont. Bank, N.A. v. Meyer*, 10 F.3d 1293, 1296-97 (7th Cir. 1993)). Moreover, Plaintiffs claim, any of Defendants' contentions raised in their Rule 12(b)(3) motion and passed on by the Court in connection with their 1404(a) motion are barred by collateral estoppel. *Id.* at 11 (citing *Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 167-68, 60 S. Ct. 153, 84 L. Ed. 167 (1939)).

Plaintiffs' arguments are not persuasive for the following reasons: First, while motions under Federal Rule of Civil Procedure 12(b) are typically waived if not raised immediately, Defendants here clearly did raise them in a timely fashion as affirmative defenses. They have filed no prior Rule 12(b) motions and have consistently challenged venue in this district is improper. The Seventh Circuit held that when a defendant raised an improper venue defense in its initial answer, its defense was not waived even after engaging in discovery and failing to make a Rule 12(b)(3) motion until nine months after the suit was filed. *Am. Patriot*, 364 F.3d at 887-88. Our case was filed only slightly more than one year ago, the dispositive motions deadline has not passed, and the parties have not litigated the merits of either this venue issue or the gravamen of the Complaint. Relying on *American Patriot*, we, too, conclude that Defendants' Rule 12(b)(3) motion is timely.

7

Assuming *arguendo* that Defendants' failure to file its Rule 12(b)(3) motion at the earliest possible time constituted a waiver of that motion, Plaintiffs would have revived Defendants' opportunity to file this motion, when they filed their amended complaint. *Perry v. Sullivan*, 207 F.3d 379, 383 (7th Cir. 2000). "Because a plaintiff's new complaint wipes away prior pleadings, the amended complaint opens the door for defendants to raise new and previously unmentioned affirmative defenses." *Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 1999). It would be patently unfair to allow Plaintiffs a second pleading without giving Defendants a renewed opportunity to file their motion to dismiss. Plaintiffs' insistence that in amending their complaint they merely added a party and did not alter the substance of the claims, Pls' Resp. at 10, is unavailing, and unsupported by any case law or other authority.

The 1404 (b) motion and venue objections Defendants have filed are easily distinguishable from one another and thus foreclosing claims of collateral estoppel. A motion to transfer under 1404(a) is a matter entrusted to the Court's discretion, whereas a Rule 12(b)(3) motion is based on the specific terms of the FSC at issue in the case. Thus, we hold that Defendants' Rule 12(b)(3) motion has not been waived nor is it barred by collateral estoppel principles.

### C. All parties subject to the APA.

Plaintiffs claim that Kevin and Hurst signed the APA only in their official capacities as Carroll's principals, Pls' Resp. at 17, Defs' Ex. 1 at 12, and that, in fact, Clayton also did not sign the agreement in his individual capacity. Since the agreement was between Carroll's, 21st Mortgage, and CMH, Defs' Ex. 1 at 1, Plaintiffs assert that

8

Kevin, Carrolls' Properties, and Clayton are not parties to the APA. Pls' Resp. at 15, 17. Thus, they argue, enforcement of the FSC would unjustly bind non-parties to something to which they did not agree. Enforcement would also cause major inconvenience to the parties, say Plaintiffs, since Carroll's would be litigating this claim against CMH and 21st Mortgage in Tennessee, while Kevin, in his individual capacity, would be required to pursue the fraud claim against Clayton in Indiana. *Id*. at 18.

Plaintiffs' arguments again are unsupported by applicable federal and state law precedent. Kevin executed the APA both as president of Carroll's Homes and individually. Defs' Ex. 1 at 11. Thus, he is bound by the terms of the APA in both respects. Moreover, courts typically "enforce forum selection clauses in favor of non-parties 'closely related' to a signatory." *Frietsch v. Refco, Inc.*, 56 F.3d 825, 827 (7th Cir. 1995). Corporations not expressly listed as parties in a contract containing an FSC are subject to the clause nonetheless, if their president, owner, or affiliated company is a signatory. *Am. Patriot*, 364 F.3d at 889; *Frietsch*, 56 F.3d at 827-28; *Hugel*, 999 F.2d at 209-10. In our case, both Carrolls' Properties and Clayton, as non-parties, have sufficient connections to make them subject to the APA. As we have noted, Kevin Carroll was a principal of Carrolls' Properties. Pls' Am. Compl. ¶ 4. Clayton, as president of both companies, is also sued individually for fraud allegedly committed by CMH Homes and 21st Mortgage. *Id*. ¶ 7. These connections suffice to bring all the parties within the APA, making each of them subject to its terms in resolving the issues in this litigation.

9

### D. The FSC applies and must be enforced.

Plaintiffs contend that the APA applied only to the transfer of personal property on March 9, 2010, and was not intended by the parties to apply to subsequent agreements between them. Thus, according to them, the fraudulent real estate transfer, which is the source of their losses, was governed by the RESA, and the RESA did not include an FSC. Moreover, the RESA contained a merger clause barring the incorporation of any external written or oral agreement that contradicted the full terms of their agreement. Pls' Ex. G § 19. Plaintiffs' argument proceeds that the APA is inapplicable to this litigation making its FSC is inapplicable, thereby allowing the case to be litigated where Plaintiffs' damages were caused and suffered, namely, in Indiana.

We find ourselves once again in disagreement with Plaintiffs' analysis. Their complaint addresses a comprehensive fraud scheme, beginning when CMH made "a run at stealing Plaintiffs' business" in September 2008, Pls' Am. Compl. ¶¶ 22-23, and culminating in Defendants' acquisition of Plaintiffs' real estate in March 2010. *Id*. ¶ 39; Pls' Resp. at 7. The APA and RESA were executed a mere three days apart, and both dealt with Defendants' acquisition of Plaintiffs' property. Under Indiana law, documents executed together which deal with the same subject matter are construed together to determine the underlying intent. *Bruno v. Wells Fargo Bank, N.A.,* 850 N.E. 2d 940, 945-46 (Ind. Ct. App. 2006). In construing the APA and RESA together it becomes clear that they simply address different parts of the same allegedly "fraudulent" scheme. Thus, it would be unreasonable to interpret them in a way that suggests that the parties intended

to litigate some parts of their dispute in Tennessee and other parts in Indiana. *See Am. Patriot*, 364 F.3d at 889.

The FSC provides that "[a]ny action filed in connection with this Agreement shall be brought in the . . . Eastern District of Tennessee." Defs' Ex. 1 ¶ 22. On this basis, we conclude the APA reflects the parties' intention at the time they entered into their contract that any litigation over Plaintiffs' asset transfers to Defendants was to be litigated in Tennessee. The RESA did not contain any FSC, so requiring the fraudulent real estate transfer to be litigated in Tennessee does not contradict the RESA's merger clause. Barring any equitable concerns, the FSC by its terms applies to this case and is enforceable according to those terms.

### E. No equitable grounds exist to trump the FCS.

A party may rebut an FSC's presumed validity by showing its incorporation into the agreement was the result of "fraud, undue influence, or overweening bargaining power," *M/S Bremen*, 407 U.S. at 12, or that enforcement would be unconscionable. Plaintiffs claim here that they agreed to the APA only after two years of fraudulent activity by the Defendants which had left them in such a precarious financial position that the asset sales agreed to in the APA and RESA were necessary in order simply to keep their business alive. Pls' Resp. at 21. When the APA was executed, Plaintiffs report that they were on the verge of bankruptcy due to Defendants' efforts to strip them of their showroom inventory, while CMH Homes remained financially healthy. The FSC provision was allegedly inserted into the APA less than a week prior to its execution with

11

no prior notice or opportunity to negotiate its terms on the part of the Plaintiffs. *Id*. at 12, 20.

Plaintiffs contend that all of these circumstances—the lack of negotiation over the FSC, its belated insertion into the negotiation process, and the parties' unequal bargaining power—substantiate their claim that they were fraudulently induced into signing the contract containing the FSC. *Id*. at 20. Thus, the FSC should be invalidated, *id*. at 19-20 (citing *Dyersburg Mach. Works, Inc. v. Rentenbach Engineering Co.*, 650 S.W.2d 378, 380 (Tenn. 1983); *Lamb v. MegaFlight, Inc.,* 26 S.W.3d 627, 631 (Tenn. Ct. App. 2000)), and Defendant s' motion to dismiss denied. *Id*. at 12 (citing *M.G.J. Indus., Inc. v. Greyhound Fin. Corp., Inc.*, 826 F. Supp. 430 (M.D. Fla. 1993)).

Under Indiana law, a contract is presumed to be "the freely bargained agreement of the parties," and "one is bound to know the contents of the contract which he signs." *NationsCredit Commercial Corp. v. Grauel Enters, Inc.,* 703 N.E.2d 1072, 1079 (Ind. Ct. App. 1998). To invalidate the FSC, Plaintiffs must prove they "unwillingly signed the [contract] or . . . [were] unaware of its terms," *Farm Bureau Gen. Ins. Co. of Mich. v. Sloman*, 871 N.E.2d 324, 329 (Ind. Ct. App. 2007), and show that the clause itself was fraudulently obtained or "interferes with the orderly allocation of judicial business." *Id*. (internal quotation omitted). Otherwise, an FSC must be considered freely negotiated, even if the parties' bargaining power is disparate. *Id*. at 330; *Horner v. Tilton*, 650 N.E.2d 759, 763 (Ind. Ct. App. 1995).

Plaintiffs have not successfully shouldered this heavy burden to rebut the FSC's presumed validity. Plaintiffs assert that their attorney was not certain at the time of the

closing that the APA would actually be executed at that meeting, had not been provided a copy of the APA prior to the closing, and had no knowledge of the contents or terms of the APA. Pls' Resp. at 20. Even assuming the truth of these assertions, they do not render the FSC invalid. Plaintiffs do not claim they were prevented from reading the APA or the portion of it containing the FSC or from asking questions about the clause at the closing. The insertion of this provision shortly before the APA was executed, with no notice to Plaintiffs' counsel, may have been confusing and frustrating and unfair, but the facts before us do not establish that at the time the APA was executed the parties remained in the dark regarding the inclusion of the FSC.

Plaintiffs' contention that the FSC was fraudulently obtained as a result of duress is similarly unavailing. They argue that, had they not signed the APA containing the FSC, "Defendants would have refused to execute subsequent agreements and foreclosed on Hurst's farm." Pls' Resp. at 20. This theory of relief lacks any support in case law establishing that having to choose between the Hobson's choice of signing what they perceive to be a one-sided agreement or allowing their business to fail amounts to duress or unconscionability. *Cf. Pinnacle Computer Servs., Inc. v. Ameritech Pub., Inc.,* 642 N.E.2d 1011, 1017 (Ind. Ct. App. 1994) (to be unconscionable under Indiana law, the agreement must be one that "no sensible person not under delusion, duress, or in distress would make, and that no honest and fair person would accept"). We do not reach that conclusion either in the matter before us.

Plaintiffs have been unable to adduce any evidence that they were fraudulently induced by Defendants into agreeing to the APA through a misrepresentation of the

13

agreement's terms. Further, it is not established that Defendants had any duty to make any additional disclosures. *See Jackson v. Blanchard*, 601 N.E.2d 411, 418-19 (Ind. Ct. App. 1992). Plaintiffs have simply failed to show that they were fraudulently induced by the Defendants to enter into an agreement with them. *Scherk,* 417 U.S. at 519 n.14; *Bonny v. Soc. of Lloyd's*, 3 F.3d 156, 160 (7th Cir. 1993); *Isp.com, LLC v. Theising*, 805 N.E.2d 767, 773 (Ind. 2004). Rather, the evidence indicates that the FSC was freely negotiated despite the unpalatable options faced by Plaintiffs. As such, it is not subject to invalidation by us on the basis of fraud.

In the absence of fraud, the only other basis on which the court is authorized by law to invalidate the parties' agreement is unconscionability based on a showing that Plaintiffs would otherwise be effectively deprived of their day in court. *M/S Bremen*, 407 U.S. at 18; *Farm Bureau*, 871 N.E.2d at 329. Plaintiffs have not made such a showing, having failed to prove that the FSC limits their ability to sue the Defendants in Tennessee. We note, in this regard, that all Defendants are domiciled in Tennessee, which circumstance reinforces our decision to uphold and enforce the FSC, since it does not constitute a bad-faith attempt to litigate in a forum in which no party has sufficient contacts.

### F. The Eastern District of Tennessee is a suitable forum.

Plaintiffs include in their arguments several reasons which they maintain support a decision not to enforce the FSC and for us to retain this litigation: (1) the fraud was committed in Indiana, Pls' Resp. at 13; (2) all the Plaintiffs are Indiana citizens, and Indiana has an interest in protecting its citizens from fraud by nonresidents, *id*. at 14; and

14

(3) Southern Indiana is the most convenient forum for non-party witnesses, whereas the Eastern District of Tennessee is not convenient to any key non-party witnesses. *Id*. at 18-19.

Having held that the FSC is valid and enforceable, we refrain from addressing these equitable arguments relating to whether Indiana is either a proper or preferred forum state. *See ApplianceZone,* 2009 WL 5200572, at *3.

## IV. Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss for Improper Venue is **GRANTED**. Plaintiffs' Motion for Evidentiary Hearing is **DENIED** as moot. The Clerk shall close this cause of action on the Court's docket and transfer the case to the United States District Court for the Eastern District of Tennessee, consistent with the parties' agreement in the APA.

**IT IS SO ORDERED.**

Date: 03/12/2013

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Michael Kessell Nisbet
LANDRUM & SHOUSE, LLP
mnisbet@landrumshouse.com

Elizabeth A. Deener
LANDRUM & SHOUSE, LLP
edeener@landrumshouse.com

Larry C. Deener
LANDRUM & SHOUSE, LLP
ldeener@landrumshouse.com

David T. Newton
MAYNARD COOPER & GALE, P.C.
dnewton@maynardcooper.com

Edward S. Sledge, IV
MAYNARD, COOPER & GALE, P.C.
esledge@maynardcooper.com

Lee E. Bains, Jr.
MAYNARD, COOPER & GALE, P.C.
lbains@maynardcooper.com

William Edward Skees
THE SKEES LAW OFFICE
ed@skeeslaw.com