UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

KEVIN CARROLL, et. al., )
 )
 Plaintiffs, )
 )   Civil Action No.
v. )   3:13-cv-141-JMH
 )
CMH HOMES, INC., et. al., )  MEMORANDUM OPINION & ORDER
 )
 Defendants. )
 )

\*\*\*

This matter is before the court on Defendants' Motion for Entry of Judgment under Rule 54(b) and Motion for Summary Judgment. [D.E. 100, 101]. Plaintiffs have responded [D.E. 112, 110], and Defendants have replied [D.E. 117, 119]. Thus, these motions are now ripe for review. For the reasons which follow, Defendants' Motion for Entry of Judgment [D.E. 100] will be denied, and their Motion for Summary Judgment [D.E. 101] will be granted.

**FACTUAL AND PROCEDURAL BACKGROUND**

Prior to October 2008, Kevin Carroll and his brother, Hollis Carroll, were co-owners of Carroll's Mobile Homes, Inc. ("Carroll's"), a mobile home dealership located in Georgetown, Indiana. [D.E. 102 at 1; D.E. 89 at 1–2]. Carroll's received the majority of its supply of mobile homes from a manufacturing plant owned by Defendant CMH

Homes, Inc. ("CMH") in Hodgenville, Kentucky. [D.E. 102 at 4; D.E. 111 at 2].

Sometime in 2008, Kevin Carroll decided to buy out his brother to become the sole owner of Carroll's, but needed to obtain a loan to do so. [D.E. 102 at 5; D.E. 111 at 3]. After two banks refused to loan the money for the buyout, Kevin Carroll told Kevin Clayton, the Chairman of the Board of CMH and the Chief Executive Officer of Clayton Homes, Inc., the indirect parent corporation of CMH and Defendant 21st Mortgage, that he needed financing for the buyout. [D.E. 102 at 6; D.E. 111 at 3]. Clayton arranged for Kevin Carroll to obtain the necessary money for the buyout with a loan from 21st Mortgage. [D.E. 102 at 6; D.E. 111 at 3—4].

Kevin Carroll accepted the loan on behalf of Carroll's, and was represented by an attorney in the weeks leading up to the loan closing. [D.E. 102 at 7; D.E. 111 at 4]. As security for the loan, Carroll's and James Hurst, principles of Carrolls' Properties, LLC, executed two mortgages on three parcels of real estate on October 1, 2008. [D.E. 102 at 9; D.E. 111 at 4]. Kevin Carroll also executed a personal guaranty agreement in connection with one of the mortgages. [D.E. 102 at 9; D.E. 111 at 4]. The parties closed on the loan on October 1, 2008. [D.E. 102 at 7; D.E. 111 at 4].

2

On October 15, 2008, Defendants announced that they would be closing their Hodgenville Plant, a fact about which Defendants had not previously informed Plaintiffs even though Plaintiffs obtained eighty-five percent of their total inventory from the Hodgenville plant, and had just indebted themselves to 21st Mortgage fourteen days prior. [D.E. 102 at 10; D.E. 111 at 6]. However, Kevin Carroll admitted that no one represented to him during the loan negotiations that the Hodgenville Plant would stay open, either, and no guarantee that it would remain open was included in the loan agreement. [D.E. 102 at 10; D.E. 111 at 5]. Further, Kevin Carroll admits that he did not ask anyone during the loan negotiations whether the Hodgenville Plant would remain open. [D.E. 102 at 10; D.E. 111 at 5]. Shortly after October 15, Kevin Carroll contacted Defendants and complained that he believed that their failure to tell him about the plant closure was a deliberate scam to take his business. [D.E. 101-2 at 54–55].

After the Hodgenville Plant closed, Plaintiffs had to obtain their inventory from a plant in Tennessee. [D.E. 89 at 2]. According to Plaintiffs, these homes were of lower quality and caused Plaintiffs to experience a sharp drop in sales. [D.E. 89 at 2]. CMH did make efforts to help

Plaintiffs with their financial struggles, including selling some of the last manufactured homes from the Hodgenville Plant below invoice price and expediting rebates to help Carroll's with cash flow. [D.E. 102 at 13; D.E. 111 at 6]. However, by February 2010, Carroll's defaulted on the loan agreement for the second time, and 21st Mortgage threatened to foreclose. [D.E. 102 at 14; D.E. 111 at 7].

Instead of foreclosing, CMH offered to acquire the assets of Carroll's and Carroll's Properties in exchange for nearly two million dollars and a release on the mortgage lien on James Hurst's property. [D.E. 102 at 15; D.E. 102 at 15; D.E. 111 at 7]. Although they claim they did so under economic duress, Plaintiffs agreed to the deal, and, over the course of several weeks, the terms of the Asset Purchase Agreement ("APA") were negotiated between Plaintiffs' self-selected attorney and Defendants. [D.E. 102 at 15; D.E. 111 at 7]. The APA included a forum selection and choice of law clause, which reads as follows:

> This agreement shall be interpreted in accordance with the laws of the State of Tennessee without reference to any choice of law provisions. Any action filed in connection with this Agreement shall be brought in the United States District Court for the Eastern District of Tennessee and each of the parties irrevocably submits to the exclusive jurisdiction of such court, waives any objection, present or future, to venue and convenience of forum

and agrees not to bring any action in any other court.

[D.E. 101-1 at 10]. The APA also contained a broad release clause, which reads as follows:

> Effective upon the execution of this agreement, and in consideration of this Agreement, Seller, Seller Principals, its subsidiaries and other affiliates, for themselves, and for its officers, directors, employees, successors and assigns hereby do release and forever discharge CMH [Homes], 21st Mortgage, and their parent companies, directors, officers, representatives, agents, employees, successors, assigns and any subsidiary thereof, from any and all claims, actions, suits, accounts, covenants, contracts, including the Asserted Claims the Seller or Seller Principals ever had, now has or which its successors or assigns hereafter, can, shall or may have, for upon or by reason of any matter or thing whatsoever.

[D.E. 101-1 at 9]. Kevin Carroll signed the APA both individually and in his capacity as principal of Carroll's. [D.E. 101-1]. The parties also signed a Real Estate Sales Agreement by which Plaintiffs conveyed James Hurst's property to Defendants and Defendants released the mortgage. [D.E. 26].

On February 14, 2012, Plaintiffs filed suit in the Circuit Court of Floyd County, Indiana, for fraud and constructive fraud arising out of the 2008 buyout loan, and Defendants timely removed the action to the United States District Court for the Southern District of Indiana. [D.E. 1]. Defendants also filed a counterclaim that sought a

5

Case 3:13-cv-00141 Document 120 Filed 06/04/13 Page 5 of 16 PageID #: 2165

declaration that the release contained within the APA barred Plaintiffs' claims. [D.E. 3]. On April 10, 2012, Defendants filed a motion requesting the Indiana district court to transfer the action to the Eastern District of Tennessee pursuant to 28 U.S.C. 1404(a), but the court denied the motion. [D.E. 40]. Then, after Plaintiff filed an amended complaint, the district court granted Defendants' motion to dismiss the amended complaint for improper venue under Federal Rule of Civil Procedure 12(b)(3), and ordered the clerk to "transfer the case to the United States District Court for the Eastern District of Tennessee, consistent with the parties' agreement in the APA." [D.E. 89 at 15].

## STANDARD OF REVIEW

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In deciding a motion for summary judgment, the factual evidence and all reasonable inferences must be construed in the light most favorable to the nonmoving party. *Anderson v. Liberty*

6

*Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Summers v. Leis,* 368 F.3d 881, 885 (6th Cir. 2004).

The judge's function on a summary judgment motion is not to weigh the evidence, but to decide whether there are genuine issues of material fact for trial. *Anderson,* 477 U.S. at 249; *Multimedia 2000, Inc. v. Attard*, 374 F.3d 377, 380 (6th Cir. 2004). A material fact is one that may affect the outcome of the issue at trial, as determined by substantive law. *Anderson*, 477 U.S. at 242. A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows "that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248; *Summers*, 368 F.3d at 885.

## ANALYSIS

### A. MOTION FOR ENTRY OF JUDGMENT UNDER RULE 54(b)

Defendants ask this court to certify under Federal Rule of Civil Procedure 54(b) that the Southern District of Indiana's order [D.E. 89] dismissed Plaintiffs' claims in their entirety, leaving Defendants' counterclaim as the only live claim in this action. The court disagrees.

In its order, the Indiana district court granted Defendants' motion to dismiss for improper venue under Federal Rule of Civil Procedure 12(b)(3), and "transfer[ed] the case to the United States District Court for the

7

Eastern District of Tennessee, consistent with the parties' agreement in the APA." [D.E. 89 at 15]. The court gave no indication whatsoever that it was dismissing Plaintiffs' claims with the expectation that Plaintiffs would have to re-file their claims in the Eastern District of Tennessee. Nor, as Defendants suggest, did the court state that it was only transferring Defendant's counterclaim. Instead, the court acknowledged that, pursuant to the valid forum selection clause in the APA, the Eastern District of Tennessee is the proper forum for Plaintiffs' claims, and chose to "transfer the *case*" (not counterclaim) to the Eastern District of Tennessee. [D.E. 89 at 15].

Defendants argue that this language operated as a dismissal of Plaintiffs claims. However a more likely conclusion from this language, and the conclusion that this court adopts in the absence of explicit instruction from the Indiana district court, is that it transferred the case pursuant to 28 U.S.C. § 1406, which provides that a "district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

This interpretation of the Indiana district court's action is reinforced by the court's language in its May 22, 2013 order denying Plaintiff's motion for reconsideration. [D.E. 117-1]. Indeed, in the order, the district court explicitly concluded that it did not have jurisdiction to entertain Plaintiff's motion because the "cause was transferred to the Eastern District of Tennessee on March 12, 2013." [D.E. 117-1 at 2]. Thus, Defendants' motion to certify the dismissal of Plaintiffs' claims pursuant to Rule 54(b) is denied.

**B. SUMMARY JUDGMENT MOTION**

In the APA, the choice of law clause states that the APA "shall be interpreted in accordance with the laws of the state of Tennessee without reference to any choice of law provisions," and that "[a]ny action filed in connection with this Agreement shall be brought in the United States District Court for the Eastern District of Tennessee" and subject to the "exclusive jurisdiction of such court." [D.E. 101-1 at 10]. Defendants argue, among other things, that because this choice of law clause governs the parties' transaction, the three year statute of limitations in Tennessee on claims of this nature applies to bar Plaintiffs' cause of action. In response, Plaintiffs contend that the six-year Indiana statute of limitations

9

applies because the transaction has a more significant relationship with Indiana than with Tennessee. The court agrees with Defendants that the choice of law clause is valid; therefore, Tennessee's three year statute of limitations applies to this case, and Plaintiffs' claims must be dismissed as time-barred.

### 1. Validity of the Choice of Law Clause

"Because this court is sitting in diversity, the validity of the choice-of-law clause is governed by Tennessee choice-of-law rules." *English Mtn. Spring Water Co., Inc., v. AIDCO Intern., Inc.*, No. 3:07-cv-324, 2008 WL 2278627, at *2 (E.D. Tenn. May 30, 2008) (citing *Day v. Zimmerman, Inc. v. Challoner*, 423 U.S. 3, 4 (1975)). "In Tennessee, 'parties ordinarily are free to contract that the law of some jurisdiction other than that of the place of making will govern their relationship." *Id.* (quoting *Goodwin Bros. Leasing, Inc. v. H & B, Inc.*, 597 S.W.2d 303, 306 (Tenn. 1980)). If the parties so contract, then their intent will be honored under Tennessee law if 1) the chosen jurisdiction bears a material relationship to the transaction; 2) the basis of the choice is reasonable; 3) the parties' choice does not subvert the policy of a state having a materially greater interest and whose law would otherwise govern; and 4) the choice of law provision was

10

executed in good faith.  *Invisible Fence, Inc. v. Fido's Fences, Inc.*, 687 F. Supp. 2d 726, 742 (E.D. Tenn. 2009); *see also Carefree Vacations, Inc. v. Brunner*, 615 F. Supp. 211, 215 (W.D. Tenn. 1985) ("In a multi-state transaction, the contracting parties' choice-of-law provision is valid absent contravention of public policy of the forum state or a showing that the selected forum does not bear a reasonable relationship to the transaction.").

These four factors have been met in this case.  First, Tennessee bears a material relationship to the transaction since Defendants CMH, 21st Mortgage Corporation, and Kevin Clayton are all domiciled in Tennessee.  *Cf. Carefree Vacations Inc. v. Brunner*, 615 F. Supp. 211, 215 (W.D. Tenn. 1985) (invalidating a choice of law provision that specified that Texas law would control the transaction because the transaction bore no substantial relationship to Texas since the contract was executed elsewhere and the parties were domiciled elsewhere).  Defendants' location in Tennessee also makes the choice to apply Tennessee law a reasonable and foreseeable one, thereby meeting the second factor.

Moreover, the choice of law clause does not subvert the policy of a state that has a materially greater interest in the transaction and whose law would otherwise

11

govern, mainly because Tennessee's statute of limitations would apply to this case regardless of the choice of law clause. When a diversity case is transferred to another jurisdiction under § 1406(a), such as in this case, the transferee district court applies the choice of law rules of the forum state of which it sits. *Martin v. Stokes*, 623 F.2d 469, 472 (6th Cir. 1980) ("[F]ollowing a transfer under § 1406(a), the transferee district court should apply its own state law rather than the state law of the transferor district court."). Therefore, because this action was transferred to the Eastern District of Tennessee under § 1406, and because statutes of limitation are considered procedural rules in Tennessee, the Tennessee statute of limitations would apply to this transaction regardless of whether Indiana law applied to the substance of Plaintiffs' claims. *Elec. Power Bd. of Chattanooga v. Monsanto Co.*, 879 F.2d 1368, 1375 (6th Cir. 1989) ("[S]tatutes of limitations are procedural rules and thus the statute of limitations of the forum state-Tennessee-apply to the claims brought by both the Tennessee and the Alabama plaintiffs."). Thus, Plaintiffs' insistence that Indiana law has a materially greater interest in the transaction is irrelevant for this court's purposes.

Finally, there is no indication that the APA was entered into in bad faith, as the provision was clear and explicit that the law of Tennessee would apply to any dispute related to the contract. Plaintiffs argue that they were forced to enter into the transaction under economic duress because they were forced to choose between agreement to the APA or financial ruin through Defendants' exercise of their default rights. [D.E. 110 at 9; 13—16].

However, Plaintiffs were represented by an attorney who was given the time and opportunity to read the contract. *See Wallace Hardware Co., Inc. v. Abrams*, 223 F.3d 382, 393—94 (6th Cir. 2000) (holding that a choice of law clause was enforceable when the parties to the contract were represented by attorneys, and where there was nothing in the record to suggest that the parties were unaware of the provision or lacked an opportunity to consider its ramifications.). Kevin Carroll admitted in his deposition that he was free to walk away from the transaction, albeit with financial consequences. [D.E. 101-2 at 95]. Further, Tennessee courts have refused to recognize that asserting an intention to pursue a legal remedy, such as a lender choosing to exercise their default rights under a loan agreement, constitutes economic duress. *Flynt Engineering Co. v. Cox*, 99 S.W.3d 99, 102 (Tn. Ct. App. 2002) ("[T]he

13

assertion of an intention to pursue a legal remedy is not ordinarily economic duress . . . and to do what one has a legal right to do is insufficient to create duress.") (internal citations omitted). Notably, Defendants offered to hire Kevin Carroll as the manager of the new CMH sales center, and, two days after Kevin signed the APA, he applied for employment and stated in his application that he "voluntarily" left Carroll's when CMH acquired its assets. (D.E. 101-2 at 93-95]. When all of these facts are considered together, there is no indication that the APA nor the choice of law clause were entered into in bad faith, particularly since Plaintiffs accepted the benefits of the contract and waited so long to seek to avoid it. *See Cumberland & Ohio Co. of Texas, Inc. v. First American Nat. Bank*, 936 F.2d 846, 850 (6th Cir. 1991) ("In general, a party seeking to avoid a contract induced by economic duress must act promptly upon the removal of the duress to avoid the contract" or, under Tennessee law, they will be found to have "ratified it, and [will be] estopped from claiming economic duress to avoid the agreement's terms.") (internal citations omitted).

### 2. Application of the Statute of Limitations

Because the choice of law provision in the APA is valid, Tennessee law applies to this transaction. In

Tennessee, actions for injury to property, including actions in fraud, must be commenced within three years of the date on which the action accrues. Tenn. Code. Ann. § 28-3-105; *Elec. Power Bd. of Chattanooga v. Monsanto Co.*, 879 F.2d 1368, 1375 (6th Cir. 1989). "[A] claim accrues when the plaintiffs discover their injury or 'through the exercise of reasonable care and diligence it should have been discovered.'" *Id.* at 1376 (quoting *McCroskey v. Bryant Air Conditioning Co.*, 524 S.W.2d 487, 491 (Tenn. 1975)) (internal alterations omitted).

In this case, Plaintiffs were aware of the fraud of which they complain on October 15, 2008, the date that Defendants announced that the Hodgenville plant would close. Indeed, Kevin Carroll admitted that, soon after the October 15 announcement, he contacted Defendants and complained that he believed that their failure to tell him about the plant closure was a deliberate scam to take his business. [D.E. 101-2 at 54—55]. Thus, there is no question that Plaintiffs' claims accrued in 2008. However, Plaintiffs did not file the present action until February 14, 2012. As a result, their claims are barred by Tennessee's statute of limitations, and must be dismissed.

15

### C. COUNTERCLAIM

In the counterclaim, Defendants sought a declaration that pursuant to the broad release located in the APA, Plaintiffs' claims were barred and should be dismissed. [D.E. 3 at 12—13]. Because the court has dismissed Plaintiffs' claims as untimely, Defendants' counterclaim is dismissed as moot.[1]

### CONCLUSION

For the reasons stated above, **IT IS ORDERED**:

(1) that Defendant's Motion for Entry of Judgment under Rule 54(b) [D.E. 100] is **DENIED**;

(2) that Defendant's Motion for Summary Judgment [D.E. 101] is **GRANTED** and Plaintiffs' claims are **DISMISSED WITH PREJUDICE**;

(3) that Defendant's Counterclaim is **DISMISSED AS MOOT**.

This the 4th day of June, 2013.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge

---

[1] The court notes that Defendants requested costs and reasonable attorney's fees in their prayer for relief in the counterclaim. [D.E. 13]. Because this request has been omitted from the present motions, the court presumes that if Defendants still wish to seek such relief, they will file a separate post-judgment motion to this court.

16